William J. Arnone, Jr., Esq., SBN 87803
Alicia M. Kantor, Esq., SBN 236554
MERRILL, ARNONE & JONES, LLP
3554 Round Barn Boulevard, Suite 303
Santa Rosa, California 95403
Telephone: (707) 528-2882
Facsimile: (707) 528-6015

Attorneys for Defendants
DAVID COLEMAN and
AMERIVINE, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROLAND E. GARCIA, doing business as "GARCIA INTERNATIONAL TRADING," | CASE NO. C 07 2279 **EMC** |
| Plaintiff, | **DEFENDANTS' TRIAL BRIEF** |
| vs. | **Pre-Trial Conference** <br> Date:  October 22, 2008 |
| DAVID COLEMAN, et al. | **Trial** <br> Date:  November 3, 2008 <br> Time:  8:30 a.m. <br> Courtroom:  C - 15th Floor <br> Golden Gate Avenue <br> San Francisco |
| Defendants. | |
| _____/ | |

### I.  INTRODUCTION

Plaintiff Roland E. Garcia's, doing business as "Garcia International Trading" ("Garcia"), sole surviving claim is for copyright infringement relating to the photograph of "Westside Road vineyards, in the late afternoon" (hereinafter the "Photograph").

Defendants' Amerivine, Inc. and David Coleman (collectively "Defendant") anticipated defenses to his claim at trial include but are not limited to:

1. Garcia is not the owner of the copyrights at issue;
2. Garcia Plaintiff granted Defendants a nonexclusive license to use the photograph;
3. The statute of limitations for bringing the claims alleged by Garcia has expired;
4. Laches;
5. Abandonment; and
6. Fraud on the Copyright Office.

1

## II.     FACTUAL CONTENTIONS

David Coleman is a wine label designer. Over a lengthy career, he has designed hundreds of wine labels. David Coleman and Ayn Coleman formed and own the corporation Amerivine, which bottled and sold wine labeled with Mr. Coleman's designs. Until 2004, Amerivine did business as Adler Fels Winery ("Adler Fels"). Garcia has been involved in various aspects of the wine industry since 1974.

On September 27, 1993, Lenny Siegel, a photographer, sold the Photograph to California Wine Country Consultants, Inc. ("CWCC") for $268.75. CWCC was a corporation owned by Garcia that went out of business and filed bankruptcy on March 1, 1994. Shortly before the bankruptcy was filed, Garcia wrote a letter to himself, dated January 21, 1994, pursuant to which CWCC purported to "surrender all rights and copyrights, to 'Sonoma Ridge Cellars' and transfer and assign, in lieu of payment of $150.00 for services rendered, these rights and copyrights to Garcia International Trading on this date."

In the mid-1990s, Garcia was introduced to the Colemans by his son Kelly Garcia, a wine salesman in Sonoma County since 1993, and began purchasing cases of wine from Adler Fels bearing pre-existing Adler Fels labels. In approximately June 1996, Garcia, aware of David Coleman's wine label and wine making expertise, approached David Coleman about the possibility of purchasing wine from David Coleman with a custom label developed for Garcia. David Coleman agreed to help Garcia with the production of a label for Garcia using the name "Sonoma Ridge." The label incorporated the Photograph.

After everyone agreed on a layout for the label, Coleman contacted AC Label, a company with which he had a good long-term relation, about pricing for a master run. AC Label had the ability to produce "pressure sensitive" labels that ultimately reduced the case price.[1] In May 1997, Garcia ordered 25,000 Sonoma Ridge "shells" from AC Label. At that time, he had 3,000

---

[1] Although the adhesives on the pressure sensitive labels made application to the bottles less costly, the properties of the adhesives limited the useful life of the labels to less than five (5) years. After the adhesive hardens, the labels become useless. Nevertheless, after 1997 Garcia never bothered to contact AC Label or David Coleman regarding the status of the Sonoma Ridge labels until sometime in 2007 shortly before he filed the instant lawsuit. By then the labels would long since have become worthless, had they not been used by Coleman pursuant to the agreement he reached with Garcia.

1  of the Sonoma Ridge shells imprinted with 1994 Chardonnay and 1,500 imprinted with 1994
2  Sauvignon Blanc which were then shipped to Adler Fels.  The total price of the invoice from AC
3  Label was $4,202.20.[2]
4       On or around June 6, 1996, Garcia placed an order for some, as yet unlabeled, Sonoma
5  Ridge wine.  On June 6, 1996, Adler Fels sent Garcia invoice #96-602 in the amount of
6  $3,360.00 for 112 cases of Sauvignon Blanc, invoice #96-603 in the amount of $5,040.00 for 168
7  cases of Sauvignon Blanc, and invoice #96-604 in the amount of $11,200.00 for 280 cases of
8  Chardonnay.  Although Adler Fels' policy was that all purchased wine must be prepaid before
9  delivery, by November 1996, Garcia still had not paid for the wine being held for him.
10 Accordingly, the parties negotiated an agreement to relieve Garcia of his obligation to pay
11 invoices #96-603 and #96-604.  Pursuant to the agreement, Garcia agreed that Adler Fels could
12 sell the cases that Garcia had ordered but failed to pay for affixed with the Sonoma Ridge label.
13 Relieved of his debt, Garcia ordered a new batch of wine from Adler Fels, including 56 cases of
14 Sonoma Ridge Sauvignon Blanc and 56 cases of Sonoma Ridge Chardonnay from Adler Fels.
15      After Coleman paid Garcia's delinquent AC Label bill and reached his agreement with
16 Garcia, Adler Fels began selling wine bearing the Sonoma Ridge labels to distributors located
17 throughout the United States.  Over time, Adler Fels affixed all of the remaining Sonoma Ridge
18 labels to wine bottles and sold them to distributors.  The distributors, in turn, distributed Sonoma
19 Ridge to retailers and restaurants throughout the United States California, including
20 establishments in Santa Rosa, California where Garcia lived until August 2000.
21      In 2003, Adler Fels discontinued use of the Photograph on the Sonoma Ridge label and.
22 In 2004, Amerivine sold Adler Fels and approximately 250 other brand names in a well
23 publicized multi-million dollar transaction.  The new owner subsequently discontinued
24 production of Sonoma Ridge wines altogether.  In January 2007, Garcia filed a Certificate of
25 Registration with the United States Copyright Office claiming that he was the author of the

---

[2] Although payment terms on the AC Label invoice were net 30 days, Garcia failed to pay the amount due.  The debt was sent out for collection by a law firm.  In the meantime, in an effort to save Garcia further embarrassment and to a make whole a very important supplier, Adler Fels paid the remaining balance to AC Label using its American Express card.

3
DEFENDANTS' TRIAL BRIEF                                                                                                          C 07 2279 EMC

Sonoma Ridge Wine Label featuring the Photograph. The Copyright Office rejected Garcia's claim on the ground that the label was not entitled to copyright protection. Thereafter, Garcia submitted an Amended Certificate of Registration for only the Photograph, and claiming to be the author of the Photograph. The Copyright Office accepted the Amended Certificate of Registration and registered a copyright for the Photograph. Garcia filed the instant lawsuit for copyright infringement on April 26, 2007.

### III.  LEGAL BRIEF

**A.  GARCIA DOES NOT OWN THE COPYRIGHT**

In his First Amended Complaint, Garcia alleges that the Defendants have "infringed Plaintiff's copyrights in the 'Sonoma Ridge' wine label design . . . in violation of Section 106 of the Copyright Act." The elements required to establish a claim for infringement of a copyright are ownership by the plaintiff of a valid copyright and copying by the defendant of the constituent original elements of the copyrighted work. Pasillas v. McDonald's Corp., 927 F.2d 440, 442 (9th Cir. 1991). As set forth below, Garcia's claim for copyright infringement fails because an examination of the chain of title reveals that Plaintiff is not the owner of the Photograph.

The Copyright Act provides that only the "legal or beneficial owner of an exclusive right under a copyright [may] institute an action for any infringement of that particular right while he or she is the owner of it." 17 U.S.C. § 501(b). A certificate of registration will raise the presumption of valid copyright ownership. See 17 U.S.C. § 410(c); Micro Star v. Formgen Inc., 154 F.3d 1107, 1109-10 (9th Cir. 1998). However, the presumptive validity of the certificate may be rebutted and defeated. S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1086 (9th Cir. 1989), citing, Seiler v. Lucasfilm, Ltd., 808 F.2d 1316, 1322 (9th Cir. 1986).

To be valid, any transfer of copyright ownership, other than by operation of law, must be in writing and signed by the copyright owner or by his or her agent. 17 U.S.C. § 204(a). Further, the writing must be construed to refer to the domain of copyright ownership rather than to other interests. Bieg v. Hovnanian Enters., Inc., 157 F.Supp.2d 475, 480-482 (E.D. Pa. 2001).

1   The January 21, 1994 letter from CWCC purports to transfer to Garcia International Trading rights and copyrights in "Sonoma Ridge Cellars."  The critical flaw in Garcia's transfer agreement is the absence of any reference to the Photograph or any indication that "Sonoma Ridge Cellars" is related to a photograph of vineyards on Westside Road.  Further, at his deposition, Garcia admitted that "Sonoma Ridge Cellars" was simply a name owned by CWCC that was never used in any context.  To infer from the letter's language, a transfer of copyright ownership in the Photograph would contravene the very purpose of section 204(a):  to "enhance predictability and certainty of copyright ownership" which was Congress' paramount goal when it revised the Act in 1976.  Effects Assoc., Inc. v. Cohen, 908 F.2d 555, 557 (9th Cir. 1990), citing, Community for Creative Non-Violence v. Reid, 490 U.S. 730, 749-750 (1989).

Because Garcia's letter makes no such reference and otherwise fails to evidence a transfer of the copyrights associated with the Photograph, a jury could not find that Garcia established the ownership element required to prevail in this infringement action.

**B.   DEFENDANTS' AFFIRMATIVE DEFENSES BAR PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIM**

Even if a jury determines that, Garcia is the owner of the Photograph, Garcia's claim for copyright infringement is barred by Defendants' affirmative defenses on non-exclusive license, statute of limitations, laches, abandonment and fraud on the Copyright Office.

**1.   Non-Exclusive License.**

One who owns a copyright in a work has the exclusive right to reproduce, adapt, publish, perform, and display the work.  17 U.S.C. § 106.  A copyright holder may transfer any or all of these rights, 17 U.S.C. § 201(d)(2).  Section 204 provides that all transfers of copyright ownership must be in writing; section 101 defines transfers of ownership broadly, but expressly removes from the scope of section 204 a "nonexclusive license."  Effects Assocs., Inc. v. Cohen, 908 F.2d 555, 558 (9th Cir. 1990).  A nonexclusive copyright license may be granted orally or by implication.  Effects Associates, 908 F.2d at 558.  Implicit in a nonexclusive license is the promise not to sue for copyright infringement.  See, In re CFLC, Inc., 89 F.3d 673, 677 (9th Cir. 1996).

1   Here, the Defendants had a nonexclusive license to use the Photograph.  Garcia agreed in
2   1997 to allow Defendants to sell wine bottles bearing the Sonoma Ridge label that included the
3   Photograph within the United States (while Garcia attempted to sell the wine in Europe) in
4   exchange for forgiveness of debts owed by Garcia to Adler Fels.  The effect of the oral
5   agreement was to grant the Defendant's a nonexclusive license to use the Photograph.  That the
6   non-exclusive license given to the Defendants operates to bar Garcia's copyright infringement
7   claim.

### 2. **Statute of Limitations**.

9   The statute of limitations for claims of copyright infringement is set forth at 17 U.S.C. §
10  507.  That statute provides that no civil action shall be maintained under the provisions of the
11  Copyright Act unless commenced within three years after the claim accrues.  Garcia filed this
12  action on April 26, 2007, thus, Garcia, may sue only for alleged infringements occurring on or
13  after April 26, 2004.  Since the Defendants discontinued use of the Sonoma Ridge label bearing
14  the "Sonoma Ridge" photograph long before April of 2004, Garcia's claims are time barred.

15  Garcia, however, contends that a cause of action for copyright infringement accrues when
16  one has knowledge of a violation or is chargeable with such knowledge.  Roley v. New World
17  Pictures, Ltd., 19 F.3d 479, 7481 (9th Cir. 1994).  Garcia further contends that the statute of
18  limitations does not prohibit recovery of damages incurred more than three years prior to the
19  filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of
20  knowledge was reasonable under the circumstances.  *See* Polar Bear Products, Inc. v. Timex
21  Corp., 384 F.3d 700, 706 (9th Cir. 2004).

22  Defendants contend that tolling does not apply because Garcia's alleged lack of
23  knowledge was not reasonable under the circumstances.  The question of whether Garcia's lack
24  of knowledge about the alleged infringement until 2006 was reasonable is a disputed question of
25  fact.  The facts of the case simply do not support Garcia's claim that his lack of knowledge was
26  reasonable, given Garcia and his son's lengthy involvement in the wine industry, Garcia's
27  agreement with David Coleman regarding the sale of the wine domestically, and Garcia's failure
28  to inquire about the status of labels for approximately ten years.

**3.     Laches.**

To demonstrate laches, a "defendant must prove both an unreasonable delay by the plaintiff and prejudice to itself." Couveau v. Am. Airlines, Inc., 218 F.3d 1078, 1083 (9th Cir. 2000). Generally speaking, the relevant delay is the period from when the plaintiff knew (or should have known) of the allegedly infringing conduct, until the initiation of the lawsuit in which the defendant seeks to counterpose the laches defense. Kling v. Hallmark Cards, Inc., 225 F.3d 1030, 1036 (9th Cir. 2000). As discussed above, Garcia knew, or should have known, that Defendants were selling wines with the Sonoma Ridge label long before he decided to file this lawsuit.

The second element of laches is the reasonableness of the delay. In determining reasonableness, courts look to the cause of the delay. Danjaq LLC v. Sony Corp., 263 F.3d 942, 954 (9th Cir. Cal. 2001). Delay is impermissible when its purpose is to capitalize on the value of the alleged infringer's labor, by determining whether the infringing conduct will be profitable. Haas v. Leo Feist, 234 F.105, 108 (S.D.N.Y. 1916). Here, not coincidently, Garcia waited for years, until he learned that the Colemans sold their business, before asserting this stale claim.

Unreasonable delay, however, is not enough: "In addition, laches requires prejudice." Couveau, 218 F.3d at 1084. Courts have recognized various sorts of prejudice for purposes of laches. Factors relevant to the issue include the death or unavailability of important witnesses, the dulling of memories through the passage of time, the loss of relevant records, and continuing investments and outlays by the alleged infringer in connection with the operation of its business. Lemelson v. Carolina Enterprises, Inc., 541 F. Supp. 645, 657 (S.D. N.Y. 1982). All of these considerations demonstrate prejudice to the Defendants in the light of the facts of this case.

**4.     Abandonment.**

Abandonment is an effective defense in a copyright infringement action. "In copyright, waiver or abandonment 'occurs only if there is an intent by the copyright proprietor to surrender rights in his work." A&M Records v. Napster, Inc., 239 F.3d 1004, 1026 (9th Cir. 2001); 4-13 Nimmer on Copyright § 13.06 (2008). Accordingly, the Ninth Circuit has held that abandonment

of a right must be manifested by some overt act indicating an intention to abandon the right. Microstar v. Formgen Inc., 154 F.3d 1107, 1114 (9th Cir. 1998).

Garcia's conduct manifested an intent to abandon any copyrights associated with the Sonoma Ridge label. Those acts include ordering 25,000 labels and then only using a few of them, defaulting on the payments due for the balance, and not filing for copyright protection until 2007 (ten years after the label was created).

### 5. Fraud on the Copyright Office.

If a copyright claimant willfully misstates or fails to state a fact that, if known, might have caused the Copyright Office to reject the application, then the registration may be ruled invalid. Eckes v. Card Prices Update, 736 F.2d 859, 861 (2d Cir. 1984); 2-7 *Nimmer on Copyright* §7.20 (2008).

On his Certificate of Registration for the United States Copyright Office, Garcia willfully misstates that he is the author of the Photograph. It is undisputed that Lenny Siegel, not Roland Garcia, was the author of the work. Even if rights to the Photograph were effectively transferred to the Plaintiff (which Defendants dispute), Plaintiff should have listed himself as the assignee of the ownership rights, not the author. Plaintiff's misrepresentation of his status was a fraud on the Copyright Office. Accordingly, the Certificate of Registration for the Photograph is invalid, and Plaintiff has failed to establish subject matter jurisdiction for the court to hear this case.

## C. PLAINTIFF'S ALLEGED DAMAGES

### 1. Defendants' Profits.

In his First Amended Complaint, Garcia states that he is "entitled to damages and Defendants' profits in an amount to be proven at trial." In order to prevail on a claim of damages in the amount of a defendant's profits, the copyright owner must present proof of the infringer's gross revenue and a causal nexus between the infringement and the infringer's gross revenue. 17 U.S.C. § 504(b); *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 711, 714 n.10 (9th Cir.2004). The infringer is then required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work. *Id*.

1  Plaintiff Roland Garcia seeks damages as measured by Defendants' profits from gross
2 sales of wine bottles featuring the Photograph on the label.  Plaintiff has calculated Defendants'
3 gross sales of wine bottles featuring the Photograph on the label to be $1,374,358.06.  In order to
4 prevail on his damage claim, Plaintiff must not only present proof of Defendants' gross profits,
5 but he must also establish a causal connection between the profits and the Photograph.
6  Garcia will not be able to establish a causal connection between Defendants' profits and
7 the Photograph because the Photograph was removed from the wine label in 2003 yet Defendants
8 continued to profit from the sale of the wine.  Even if Garcia could establish the requisite casual
9 connection, he simply can not establish that Defendants' gross profits were $1,374,358.06.
10 Further, Defendants are entitled to deduct all expenses from the gross profit and to establish that
11 the profit was attributable to factors other than the Photograph i.e. the quality and taste of the
12 wine and David Coleman's relationship with the distributors.
13  Based on the foregoing, a reasonable jury is unlikely to find that Garcia is entitled to any
14 damages for Defendants use of the labels featuring the Photograph.

15  **2.  Statutory Damages**.
16  Plaintiff is not entitled to statutory damages.

**D.  ATTORNEYS' FEES**

18  17 U.S.C. § 505 states as follows:

19  In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States,
20  or an officer thereof. Except as otherwise provided in this title, the court may also award a reasonable attorney's fee to the prevailing party as part
21  of the costs.

22 Defendants request the recovery of reasonable fees and costs under this statute if they are the
23 prevailing party in this matter.

**E.  DEFENDANTS' DEMAND FOR JURY TRIAL**

25  Defendants demanded a jury trial in their Answer.  Defendant's demand was not limited
26 to specific issues and requires a jury trial of all issues properly triable to a jury. <u>Allison v. Citgo</u>
27 <u>Petroleum</u>, 151 F.3d 402 (5th Cir. 1998).
28

## IV.  CONCLUSION

Based on the foregoing facts and law, Defendants respectfully contend that a jury could not find in favor of Garcia or assess any damages against Defendants.

Dated:  October 3, 2008                           MERRILL, ARNONE & JONES, LLP


                                                  By:   /s/WILLIAM J. ARNONE, JR.
                                                        William J. Arnone, Jr., Esq.
                                                        Attorneys for Defendants