PHILIP J. TERRY (148144)
CARLE, MACKIE, POWER & ROSS LLP
100 B Street, Suite 400
Santa Rosa, California 95401
Telephone: (707) 526-4200
Facsimile: (707) 526-4707
E-Mail: pjterry@cmprlaw.com

Attorneys for Plaintiff
ROLAND E. GARCIA dba
GARCIA INTERNATIONAL TRADING

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROLAND E. GARCIA, doing business as "GARCIA INTERNATIONAL TRADING", <br><br> Plaintiff(s), <br><br> v. <br><br> DAVID COLEMAN, an individual, ; ANN COLE, an individual; AMERIVINE, INC., and DOES 1 - 100, <br><br> Defendant(s). | Case No. C 07-2279 <br><br> PLAINTIFF ROLAND E. GARCIA'S TRIAL BRIEF <br><br> Date:  NOVEMBER 3, 2008 <br> Time:  8:30 a.m. <br> Courtroom:  C |

**I. INTRODUCTION**

Plaintiff ROLAND E. GARCIA (hereinafter "Garcia" or "Plaintiff") had a plan to buy California wine and bottle it under his own label for resale. He selected the name Sonoma Ridge and went about creating the label. Defendant, DAVID COLEMAN ("Coleman") had a winery, Adler Fels, that not only could supply wine to Garcia but could custom bottle it to Garcia's specifications. Coleman had a history of custom bottling wine for clients.  In 1996 and 1997, Garcia's plan was put into action with Coleman's assistance. Meanwhile, the Garcias and the Colemans became close personal friends playing golf together and spending Thanksgiving together as the Garcias' guests in Acapulco, Mexico.

Garcia bought white wine - Sauvignon Blanc and Chardonnay - sourced by Coleman on the bulk market and Coleman bottled it under Garcia's Sonoma Ridge label. Unbeknownst to

Garcia, shortly after he arranged to have his wine shipped in June 1997, in October 1997, Coleman began producing and selling a significant amount of wine under the name "Sonoma Ridge" and using a label that was identical to Garcia's. While socializing, playing golf and traveling with Garcia, Coleman was secretly selling wine using his friend's label. Coleman sold a number of different varietals, e.g., Merlot, Zinfandel, Cabernet Sauvignon, etc. using Garcia's labels.

Garcia shipped wine in 1997 to Germany. The wine was sold over the course of 1998. There were problems with the wine and the German entity asked Garcia not to send anymore of the Sonoma Ridge wine. Garcia decided to put his plan on hold. In 2005, he decided to use his label again. In early 2006 Garcia learned that Coleman had been using labels identical to his label for "Sonoma Ridge" wines on his own account since 1998.

Garcia has a valid copyright in the photograph used in connection with his label. Coleman, utilizing an identical label between 1997 and 2004 infringed on Garcia's copyright. Coleman's late explanation that Garcia verbally agreed that Coleman could use the labels domestically is patently false.

## II.  FACTUAL STATEMENT

Between 1991 and 1994 Garcia owned and operated a company known as California Wine Country Consultants Inc. ("CWCCI"). CWCCI, located in Healdsburg, California sold wines via catalogue. Most of the wines were from established wineries but on occasion CWCCI sold wines under a label that was custom designed for CWCCI.

In September 1993 Garcia bought a photograph from photographer, Lenny Siegel. Garcia bought all rights to this photograph taken of a vineyard near West Side Road in Healdsburg. The photo depicts a Sonoma ridge (hereinafter the "Photograph").

In 1994 Garcia decided to close down CWCCI and set up a "negociant" business to purchase and bottle wine under his own label. On January 21, 1994, as President of CWCCI, Garcia conveyed all rights, including copyrights relating to the Sonoma Ridge brand, then called Sonoma Ridge Cellars, and assigned it to Garcia doing business as Garcia International Trading.

In 1995, Plaintiff began to make inquiries into creating his own label. Garcia created a

CARLE, MACKIE,
POWER & ROSS LLP

2

sketch of a wine label and consulted with various artists. Kelly Garcia, Plaintiff's son, mentioned David Coleman and his winery Adler Fels to Garcia. Coleman was custom labeling for customers who would then sell the wines as their own. Initially, Coleman had attempted to dissuade Garcia from creating his own label. His preference was for Garcia to buy Adler Fels wine.

After Garcia showed Coleman his sketch, Coleman contacted a label designer he knew, Michelle LeBlanc, and forwarded Plaintiff's sketch and the Photograph which Garcia wanted to prominently display on the label. Garcia later met with Michelle LeBlanc and went over the design of the label and made sure she understood exactly what he wanted. In November 1996, LeBlanc Design provided a mock up for Garcia's review.

In November 1996, Coleman and Garcia verbally agreed that Coleman would find the wine Garcia wanted and Garcia would buy it from him. Garcia was interested in bottling and exporting Sauvignon Blanc and Chardonnay. Coleman initially did not have the wine Garcia wanted but assured Garcia he had sources. Garcia agreed to supply Coleman the labels for the Sonoma Ridge brand. As the bottling winery, Coleman agreed to get approval for the labels and bottle the wine. Garcia understood he was to pay for the wine before pick-up.

Plaintiff and Coleman had a common interest in golf and wine. This soon brought about a friendship between the Garcias and the Colemans. In November 1996, David and Ann Coleman vacationed with the Garcias at a villa to which the Garcias had access in Mexico.

In December 1996, Garcia received a quote for 25,000 Sonoma Ridge master labels and 2,500 Chardonnay North Coast imprints from Northwestern Graphics. Plaintiff sent a fax to Coleman on December 16, 1996, with a copy of Northwestern Graphic's quote and asked for Coleman's comments. On December 16, 1996, Coleman responded that he thought the quote was high and suggested that Garcia and Coleman hold off and go to the printer together to negotiate. Garcia thereafter received a quote from AC Label. This was acceptable and Garcia asked Coleman to forward to AC Label the last piece of information needed to print the labels: German telephone numbers for Sonoma Ridge.

On or about April 18, 1997, AC Label sent Garcia an Order Acknowledgement for

25,000 Sonoma Ridge master labels or "shells." 3,000 labels were imprinted with the words "Sonoma Ridge 1994 Napa Valley Chardonnay" and 1,500 labels with the words "Sonoma Ridge 1994 North Coast Sauvignon Blanc." Garcia signed the Acknowledgment on or about April 28, 1997, and returned it to AC Label. The Order Acknowledgment shows the Sonoma Ridge labels were sold to Garcia and scheduled for shipment on May 9, 1997, to Adler Fels Winery.

Then as required of the bottling winery, on or about June 8, 1997, David Coleman submitted for Garcia a Bureau of Alcohol, Tobacco and Firearms ("BATF") Application for Certificate of Exemption of Label/Bottle Approval ("COLA") for the Sonoma Ridge 1994 North Coast Sauvignon Blanc. It clearly says it was submitted for Garcia. Also, on June 6, 1997, David Coleman signed off on VI1 Certificates for shipment of Sonoma Ridge Sauvignon Blanc and Sonoma Ridge Chardonnay to a German company, APRI GMGH in Berlin. Adler Fels then submitted to Garcia Invoice # 97-621 dated June 16, 1997, for the 56 cases of Sonoma Ridge Sauvignon Blanc and 42 cases of Sonoma Ridge Chardonnay bottled for and sold to Garcia for $3,360.00. These wines were paid for by Garcia and then picked up for delivery to Garcia's shipper, Demco Maritime. The wines were shipped from Long Beach to Bremen, Germany, and arrived on or about July 17, 1997. On June 20, 1997, the BATF approved the COLA application for the Sonoma Ridge 1994 Sauvignon Blanc.

The Sonoma Ridge wine produced by Adler Fels was not well received in Germany when the German distributor began to sell it in the early part of 1998. The distributor decided not to order any more wine and asked Garcia not to purchase any more from Adler Fels. Garcia decided in 1998 to focus on other producers in Europe and put the Sonoma Ridge label on the back burner. In late 2005, Garcia decided to make another attempt with his Sonoma Ridge label and brand. In early 2006, Garcia learned that his friend Coleman had been filing COLA's for Sonoma Ridge wine for his own account and selling such wine since 1997.

Plaintiff has since learned that sometime after June 1997, Coleman begin to systematically produce, manufacture, distribute and sell wines bearing the "Sonoma Ridge" brand name and photograph using labels that were identical to Plaintiff's label. Sometime after

1  June 1997, Defendants used for their own account and profit the approximately 20,500 "Sonoma
2  Ridge" master labels.  Sometime after June 1997, Coleman also ordered additional labels from
3  AC Label, labels again that were identical to Plaintiff's label.

4      Plaintiff has since learned that in March 1998 Coleman filed an application to register
5  "SONOMA RIDGE" as a trademark in the state of California, identifying "David F. Coleman,
6  (A Partnership) in Adler Fels" as the applicant and owner of the mark. A business associate of
7  Coleman's, Allied Management of New Jersey, the management wing of a larger retailer, filed
8  an application in April 1998 to register "SONOMA RIDGE" as a trademark with the United
9  States Patent and Trademark Office ("USPTO"), claiming first use as of November 1997.

10      During the time period 1997 to 2005, Garcia maintained dual residency in the United
11  States and Germany. From 1997 to August 2005 Garcia spent every other two weeks in
12  Germany.

13                                       **III.   LEGAL DISCUSSION**

14  **1. Coleman Infringed Garcia's Copyright.**

15      To establish copyright infringement, there are two elements that Plaintiff must establish.
16  First, Plaintiff must establish ownership of a copyright or an exclusive right under the copyright.
17  17 USC §410(c). Second, Plaintiff must demonstrate unauthorized copying or violation of any
18  of the rights enjoyed by the copyright owner.  17 USC §106. The elements of copyright
19  infringement are thus, fairly straight forward:  Plaintiff must show he owns a valid copyright and
20  that Defendant copied original elements from the copyrighted work. *See* Narell v. Freeman (9th
21  Cir 1989) 872 F2d 907, 910.

22      In this case, the evidence supports that Plaintiff owns the copyright to a particular
23  photograph. All rights to the photograph in question were purchased by Garcia.  Defendants
24  Coleman and Amerivine Inc., with full knowledge the Photograph and label belonged to Garcia,
25  went ahead and copied for their own use the label and Photograph for commercial gain without
26  Garcia's knowledge or consent.

27      There are significant facts supporting Plaintiff's claim of copyright infringement. Under
28  oath in a prior proceeding, Coleman conceded that the label, and more importantly, the

CARLE, MACKIE,
POWER & ROSS LLP

5

1  Photograph at issue in this case belonged to Garcia.  When asked how it was he came to be
2  involved in bottling wine using the label Sonoma Ridge, Coleman's response is telling:
3      Q: Tell me about Sonoma Ridge.  Did you create the label for Sonoma Ridge?
4      A: No.
5      Q: Did you design it?
6      A: No.
7      Q: Do you know who did?
8      A: No.
9      Q: Do you know who did?
10     A: No.
11     ...
12     Q:  When did you first become involved with Sonoma Ridge wines?
13     A: I'm guessing, but I would say 1997, '96, maybe.
14     Q: And how did you become involved with it?
15     A: A fellow came to me wanting me to bottle wine.  Well, he wanted to buy wine from
16 me and he wanted me to put that label on it.
17     Q: And who was that?
18     A: His name was Roland Garcia.
19     ...
20     Q: Do you know who he worked for or did he have a company?
21     A: He had his own company.
22     Q: And what was the name of that company?
23     A: I believe it's called GIT; Garcia International Trading; ah yes.
24     ...
25     Q: So Mr. Garcia came to you in 1996, '97 and asked you to bottle Sonoma Ridge
26     wines: is that your testimony? ...
27     A:  Yes.  That's pretty close to being correct.
28     ...

CARLE, MACKIE,
POWER & ROSS LLP

6

1  Q: Okay. Where did the labels come from then?
2  A: We made the labels.
3  Q: You made the labels. Did he have the design for the labels?
4  A: More or less. We – yes; more or less.
5  Q: What do you mean by "more or less?"
6  A: Well, he had the photograph of the picture; he had – I guess we stuck all the parts
7  together.
8  Q: And did he know that or did he tell you that he wanted the label to have the
9  Sonoma Ridge Trademark or trade name or the brand on it?
10 Q: He said he owned the name, Sonoma Ridge; or he had bottled wine previously under
11 the name Sonoma Ridge someplace else. And they had a label and he just sort of had me do
12 what they had done before.
13 Q: Was there anyone else besides Garcia International Trading involved in the early
14 days of the Sonoma Ridge brand?
15 A: No.
16 (Coleman Deposition September 27, 2002, pp 16:15-21, 17:9-20:14)
17 Garcia's use of the proprietary wine label and the name "Sonoma Ridge" was clearly
18 known to Coleman. Coleman agreed to supply wine and bottle wine for Garcia using Garcia's
19 labels. Coleman was paid for his services. Coleman then effectively utilized Garcia's extra
20 labels, ordered more and began to sell wine under the "Sonoma Ridge" label in violation of
21 Garcia's rights and all the while playing golf and traveling with Garcia.

### 2. Coleman's Argument That Garcia Does Not Own The Photograph Has No Basis in Fact.

Defendants attempt to infer that there has been no clear chain of title of the Photograph at issue. Garcia owned and operated CWCCI between 1991 and 1994. The prominent feature of the front page of the catalogue from 1993 to 1994 was the photograph of the "Sonoma Ridge" taken by Lenny Siegal. All rights to the Photograph had been transferred to CWCCI by Mr. Seigel. Page 2 of the catalogue clearly notes the preservation of the copyrights. When Garcia, as

President of CWCCI assigned "all rights and copyrights" to Sonoma Ridge Cellars to Garcia International Trading Co., it was with the clear intention that any copyrights, including the recently purchased rights to the Sonoma Ridge photograph featured on the CWCCI catalogues, owned by CWCCI were included in that transfer. CWCCI's transfer of ownership rights to the Sonoma Ridge photograph to Garcia easily meet the elements of 17 U.S. C. §204(a). The transfer was in writing and signed by the owner. Further, the writing memorialized the rights conveyed. The language contained in the transfer by CWCCI clearly satisfies the §204(a) requirement and is no way fatally "vague" as Defendants contend. A document simply stating that a party *"does hereby sell, assign, transfer and set over to [the other party] the entire right, title and interest to any copyrights . . ."* will satisfy the requirements of section 204(a). *Radio TV Espanola S.A. v. New World Entertainment, Ltd.*, 183 F.3d 922, 929 (9th Cir. 1999).

### 3. Coleman's Last Minute Argument That Garcia Committed Fraud On The USPTO Is Simply Unfounded.

Coleman now appears to argue that Garcia committed some fraud on the USPTO. Garcia has never denied purchasing all rights to the Photograph from Lenny Seigel. Moreover, his testimony about what led him to seek a copyright registration and what steps he took will demonstrate that stating his name under author was, if it was a mistake, inadvertent and inconsequential. The same application that was approved makes it clear he purchased the Photograph. There is no intentional and material misstatement that somehow invalidates the copyright. *See Lamps Plus, Inc. v. Seattle Lighting Fixture Co.* (9th Cir 2003) 345 F3d 1140. Simply put, Defendants' last minute argument regarding fraud on the USPTO is completely without merit.

### 4. By Arguing That Garcia Gave Him Verbal Permission To Use The Labels In Question, Coleman Concedes Garcia's Copyright.

Defendants claim the parties verbally agreed that Coleman could sell in the US wine affixed with the Sonoma Ridge labels. This is fatally flawed because of its factual inconsistencies. There is no evidence to support this other than David Coleman's self serving testimony. Moreover, his assertion necessarily concedes that Garcia had a copyright interest in

CARLE, MACKIE,
POWER & ROSS LLP

the Photograph.

Coleman contends that Adler Fels prepared invoices #96-602, #96-603, and #96-604 in *June 1996* for 112 cases of Sauvignon Blanc, 168 cases of Sauvignon Blanc, and 280 cases of Chardonnay. Coleman states that it was Adler Fels' policy that all ordered wine be paid for in full before being released to the customer. Coleman contends that Garcia could not pay for all of the wine described in the June 1996 invoices and that the parties, as an accommodation to Garcia, agreed that Coleman could sell the wine Garcia could not afford to pay for in the US.

The impossibility of this scenario is demonstrated by the fact that Garcia did not even order the "Sonoma Ridge" labels at issue until April of 1997. Moreover, the labels were not even shipped until May of 1997 – almost a year after the June 1996 invoice. There were no wines bottled by Adler Fels and "affixed" with the Sonoma Ridge labels awaiting pick up by Garcia until June 1997. This is because Coleman had not sourced the wine and there were no labels yet. The invoices generated by Adler Fels in June 1996 were simply pro forma invoices for bulk wine that David Coleman proposed he could potentially bottle on behalf of Garcia. They did not represent an obligation that Coleman resolved thereby allowing him to use Garcia's label.

It was not until June of 1997 that wine was ultimately bottled, labeled and shipped on behalf of Garcia by Adler Fels. Garcia paid the invoice generated on June 16, 1997, in the amount of $3,360 in full. Garcia paid for and took possession of all Sonoma Ridge wine he asked Coleman to bottle. There was no additional Sonoma Ridge wine sitting around Coleman's warehouse that Garcia had ordered but had refused to purchase.

Nonetheless, Coleman testified there were cases of Sonoma Ridge Merlot that Garcia had ordered but failed to pick up. Coleman testified that he sold this wine in October 1997 because Garcia failed to pay for it. There are no facts to support this contention other than Coleman's own self serving testimony. The truth is Garcia took the wine he ordered. And the reason there is more wine in the warehouse is that Coleman liked the label and decided he was going to bottle more wine using the label for his own ends.

The assertion of a verbal agreement has no basis in fact but does serve to underscore that

Coleman knew that Garcia had rights in the label.

## IV.   DAMAGES

The party aggrieved by copyright infringement may seek actual damages as well as the infringer's profits attributable to the infringement. 17 U.S.C. Section 540(b). To show the infringer's profits, the copyright owner must prove the infringer's gross revenue. The burden then shifts to the infringer to prove deductible expenses and profits attributable to elements other than the copyrighted work. 17 USC § 504(b); *See Andreas v. Volkswagen of Am., Inc.* (8th Cir 2003) 336 F3d 789, 797.

Defendants have not provided a clear and complete picture of gross revenue claiming documents were lost after the sale of the winery. However, some invoices have been retrieved from third parties setting a floor or a minimum amount of gross revenue that is incontrovertible. However, when Coleman is taken at his word (as he testified under oath) combined with discovery responses, and documents that were produced in the course of discovery such as sales summaries, label purchase orders, and COLA registrations, Defendants' gross sales can be calculated as follows:

| | |
|---|---|
| October 1997 to September 1998 | $ 842,479.31 |
| 1999 | $ 306,720.00 |
| March 2000 to January 2004 | $  225,158.75 |
| Total | $1,374,358.06 |

Plaintiff seeks seek recovery of profits based on this revenue as well as any additional indirect profits that may be attributable to Defendants' infringement.

Plaintiff also requests an award of costs of suit and attorneys' fees pursuant to 17 U.S.C. § 505.

///
///
///
///
///

## V.   CONCLUSION

For the foregoing reasons, judgment in favor of Plaintiff is warranted.

Dated:  October 3, 2008

Respectfully submitted,

CARLE, MACKIE, POWER & ROSS LLP

By: _____
Philip J. Terry
Attorneys for Plaintiff
Roland E. Garcia doing business as "Garcia International Trading"