UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROLAND E. GARCIA,

        Plaintiff,

   v.

DAVID COLEMAN, *et al.*,

        Defendants.
_____/

No. C-07-2279 EMC

**ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR A NEW TRIAL; AND DENYING AS MOOT DEFENDANTS' MOTION TO STAY EXECUTION**

**(Docket Nos. 113, 114)**

Currently pending before the Court are Defendants' renewed motion for judgment as a matter of law or, in the alternative, for a new trial and Defendants' motion to stay execution of judgment pending a ruling on the first motion. Defendants seek judgment as a matter of law on the basis that Plaintiff Roland E. Garcia failed to present any evidence of a causal nexus between the infringement and Defendants' profits. For the same reason, Defendants ask, in the alternative, for a new trial. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court **DENIES** the motion for judgment as a matter of law or for a new trial. In light of this ruling, Defendants' motion to stay execution is **DENIED** as moot.

## I. DISCUSSION

A.    Legal Standard

      1.    Judgment as a Matter of Law

Motions for judgment as a matter of law are governed by Federal Rule of Civil Procedure 50. The Ninth Circuit has held that, pursuant to that rule, if there is substantial evidence to support a jury verdict, then a motion for judgment as a matter of law should be denied. *See Wallace v. City of San*

*Diego*, 479 F.3d 616, 624 (9th Cir. 2007) ("A jury's verdict must be upheld if it is supported by substantial evidence."). "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994); *see also Wallace*, 479 F.3d at 624 ("Judgment as a matter of law may be granted only where . . . the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict."). Notably, "the court must not weigh the evidence, but should simply ask whether the plaintiff has presented sufficient evidence to support the jury's conclusion." *Id.* Moreover, "[t]he evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party." *Id.* The court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.*

    2.    <u>New Trial</u>

Under Federal Rule of Civil Procedure 59(a), "[a] court may, on motion, grant a new trial to all or some of the issues – and to any party – . . . (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). As is clear from the above language,

> "Rule 59 does not specify the grounds on which a motion for a new trial may be granted." Rather, the court is "bound by those grounds that have been historically recognized." Historically recognized grounds include, but are not limited to, claims "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." [The Ninth Circuit] has held that "[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice."

*Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007).

B.    <u>Causal Nexus</u>

Title 17 U.S.C. § 504(b) provides that a "copyright owner is entitled to recover . . . any profits of the infringer that are *attributable to the infringement*." 17 U.S.C. § 504(b) (emphasis added). In the instant case, Defendants argue that they are entitled to either judgment as a matter of

law or a new trial because there is inadequate evidence of a causal nexus between their profits and the infringement.

As a preliminary matter, the Court addresses the parties' dispute as to whether the profits at issue in this case are properly characterized as direct profits or as indirect profits. While the Copyright Act provides for both kinds of profits, *see Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002) (noting that the Act does not differentiate between direct and indirect profits), and while there must be a causal nexus regardless of which kind of profits is being sought, *see Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 796 (8th Cir. 2003), a causal nexus is typically more easily shown in a direct profits case. *See Lowry's Reports, Inc. v. Legg Mason, Inc.*, 271 F. Supp. 2d 737, 751 (D. Md. 2003) (stating that, "[i]n the case of 'direct profits,' such as result from the sale or performance of copyrighted material, the nexus is obvious"). Accordingly, Mr. Garcia contends that the profits at issue in the instant case are direct profits, and Defendants argue in favor of indirect profits.

The profits in the case at bar do not fall neatly into either category. Direct profits are those "generated by selling an infringing product." *Mackie*, 296 F.3d at 914. Here, it cannot be said that Mr. Garcia's copyrighted photograph was being sold by Defendants *qua* photograph. Rather, Defendants were selling wine, and the copyrighted photograph was simply part of the packaging of the wine, being displayed on the label. *Compare Del Amo v. Baccash*, No. CV 07-663 PSG (JWJx), 2008 U.S. Dist. LEXIS 93913, at *7, 15-16 (C.D. Cal. July 15, 2008) (indicating that direct profits would be profits earned by defendant from selling plaintiff's copyrighted photographs or from selling pictures including portions of the copyrighted photographs); *Oravec v. Sunny Isles Luxury Ventures L.C.*, 469 F. Supp. 2d 1148, 1175-76 (S.D. Fla. 2006 (stating that, if an anthology contained a poem covered by a copyright, sale of the anthology would amount to sale of the copyrighted poem; adding that, "[w]hile the allegedly infringing exterior [building] design may only contribute to a portion of Defendants' overall revenue from sales of the building, there is no doubt that the exterior design is so interwoven with the building as a whole that, like the anthology which contains the infringing poem, sale of the building amounts to sale of the infringing design"); *see also Wood v. Houghton Mifflin Harcourt Publ'g Co.*, No. 07-cv-01516-DME-BNB, 2008 U.S. Dist.

3

LEXIS 103758, at *40 (D. Colo. Dec. 15, 2008) (finding that plaintiff established causal connection by showing that defendant published and profits from publication of textbooks and periodicals containing his copyrighted photographs).

Indirect profits cases typically involve a defendant using a copyrighted work to sell another product. *See, e.g.*, *Polar Bear Prods. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004) (involving defendant's use of copyrighted film footage in trade shows and a booklet to sell its watches); *Mackie*, 296 F.3d at 909 (involving defendant's use of copyrighted artwork in direct-mail subscription campaign to sell symphony tickets); *Andreas*, 336 F.3d at 789 (involving defendant's use of copyrighted drawing in television ad to sell its cars). While, in the instant case, Defendants were essentially using the copyrighted photograph to promote their wine, this case is distinguishable from the typical indirect profits case in that the copyrighted photograph was not separate from the product ultimately sold but rather came as part of that product. *Cf. Fedtro, Inc. v. Kravex Mfg. Corp.*, No. 65 C 1169, 313 F. Supp. 990, 994, 997-98 (E.D.N.Y. 1970) (involving defendant's sale of noninfringing product to which infringing card attached; noting that infringing card not a product sold to consumer as such but something that functions as "silent salesman" of product).

In the end, the Court need not resolve how the instant case should be categorized. Regardless of which model applies, Defendants' motions must be denied for the reasons stated below. Even in an indirect profits case, a copyright owner need only present evidence that "the infringement at least partially caused the profits that the infringer generated as a result of the infringement." *Polar Bear*, 384 F.3d at 711. Circumstantial evidence may establish the causal nexus. *See id.* at 712.

In the case at bar, both parties rely heavily on the Ninth Circuit's decision in *Polar Bear*. There, Timex was found liable for copyright infringement based on unauthorized use of film footage owned by Polar Bear. The footage, which featured some stars of whitewater kayaking paddling through exotic locations and using equipment bearing the Timex logo, was used to promote Timex watches in two ways. First, the footage was used at twelve different trade shows, which generated an average of $30,000 in sales per show. Polar Bear's expert testified that, based on his experience evaluating trade shows, approximately 10-25% of the sales were the result of excitement created by

the booth promotion of which the infringing materials were a substantial part.  The Ninth Circuit held that the expert's testimony "established the requisite causal connection between the category of profits sought -- revenue from trade booth sales -- and the infringement." *Id.* at 712.

Second, images from the footage were used in a Mountain Dew Booklet, which gave consumers the opportunity to buy a particular Timex watch at a discounted price.  This Mountain Dew promotion generated $564,000 in sales for Timex.  The Ninth Circuit held that Polar Bear was entitled to at least a portion of this gross profit, noting as follows.

> Polar Bear demonstrated a sufficient causal nexus through evidence that the Mountain Dew booklet contained an advertisement featuring the infringing material, *that customers who ordered Timex Expedition watches through the Mountain Dew promotion would have seen the advertisement*, and that Timex profited from the promotion.

*Polar Bear*, 384 F.3d at 712 (emphasis added).

In this case, there is no dispute that the copyrighted photograph was displayed on Defendants' wine and that Defendants profited from the sales of their wine.  As in *Polar Bear*, there is no doubt that consumers who bought the wine would have seen the copyrighted photograph on the bottle label.  First, the photograph was featured prominently on the label, *see Andreas*, 336 F.3d at 796-97 (concluding that the jury had enough circumstantial evidence to find that defendant's commercial, which infringed on plaintiff's copyrighted work, contributed to the profitable introduction of the defendant's car; noting, *inter alia*, that the copyrighted work was the centerpiece of defendant's commercial).  Second, the photograph, showing a mountain ridge in Sonoma, was inextricably linked to the brand of wine being sold by Defendants – *i.e.*, it graphically embodied the brand on the label, Sonoma Ridge.  Hence, this case is even stronger than *Polar Bear* in that the copyrighted image was not simply contained in an advertisement for the product; it was an integral part of the product itself.  In this regard, this case is more akin to a direct profit case than an indirect profit case – and thus causation is more readily inferable. In any event, under *Polar Bear*, evidence of the prominence and centrality of the photo on the label – the label being a key aspect of the product's identify – was sufficient to support a finding that the copyrighted photograph contributed to the sale of the wine.

1    Relying on *Mackie*, 296 F.3d at 909, Defendants argue that there are a multitude of reasons
2 why a consumer would have bought their wine that have nothing to do with the copyrighted
3 photograph – *e.g.*, the price of the wine, the winery that produced the wine, the type of wine, and so
4 forth – and that this negates causation. *See id.* at 916 (noting that there are "virtually endless
5 permutations to account for an individual's decision to subscribe to the Pops series, reasons that
6 have nothing to do so with the artwork in question," which was used in a Symphony promotional
7 brochure – *e.g.*, "was it because of the Symphony's reputation, or the conductor, or a specific
8 musician, or the dates of the concerts, or the new symphony hall, or the program, or the featured
9 composers, or community boosterism, or simply a love of music, or . . . ?"). While this observation
10 has some force, *Mackie* is distinguishable from the instant case. In *Mackie*, the copyrighted work
11 was used on only one page out of a twenty-four page promotional brochure to promote sales of
12 tickets to the Seattle Symphony. Here, as noted above, the copyrighted photograph was featured
13 prominently on the wine label and was a graphic embodiment of the brand name. Moreover, as
14 Defendants conceded at the hearing, it was not Mr. Garcia's burden to show that the copyrighted
15 photograph was the only reason why Defendants' wine sold, nor was it his burden to show that the
16 photograph was the main reason why the wine sold. Mr. Garcia need only have offered evidence
17 that the photograph, featured prominently on the Sonoma Ridge wine label, "may have actually
18 influenced the purchasing decisions" of consumers that bought the wine. *See id.* at 714. Once it did
19 so, Defendants had the ability (and burden) of showing what portion of the profits were attributable
20 to the copyrighted photograph. In short, there is a much higher likelihood here than in *Mackie* that
21 the copyrighted material was actually seen by purchasers and influenced the purchasing decision.

22    Defendants attempt to downplay the influence of the label in sales of the wine, but that
23 argument is belied by the testimony of Defendant David Coleman given in a deposition in a different
24 case. *See* Pl.'s Ex. 34. In that lawsuit, Mr. Coleman testified, *inter alia*, that he approached a third
25 party (Allied) about taking over the Sonoma Ridge wine label specifically, which indicates that the
26 label had significance independent of any wine to which it was affixed. At trial, Mr. Coleman also
27 testified as to the significant effect label design can have on a wine's image and marketability;
28 designing wine labels was, after all, a substantial part of Mr. Coleman's business. From all this, the

jury could have reasonably inferred that the copyrighted photograph, an integral part of the Sonoma Ridge label for many years, contributed to the sales and profits earned from the Sonoma Ridge wine by Defendants.

## II.  CONCLUSION

Accordingly, Defendants' motion for judgment as a matter of law or, in the alternative, for a new trial is denied.  Defendants' motion to stay is moot in light of this ruling.

This order disposes of Docket Nos. 113 and 114.

IT IS SO ORDERED.

Dated:  March 24, 2009

_____
EDWARD M. CHEN
United States Magistrate Judge